# UNITED STATES DISTRICT COURT
for the
_____ District of _____

In the Matter of the Search of  )
*(Briefly describe the property to be searched*  )
*or identify the person by name and address)*  )   Case No. **23MJ0990**
)
)
)

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
  ❐ evidence of a crime;
  ❐ contraband, fruits of crime, or other items illegally possessed;
  ❐ property designed for use, intended for use, or used in committing a crime;
  ❐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

*Code Section*                                    *Offense Description*

The application is based on these facts:

  ❐ Continued on the attached sheet.
  ❐ Delayed notice of \_\_\_\_ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ *(specify reliable electronic means)*.

Date: _____

*William V. Gallo*
*Judge's signature*

City and state: _____

*Printed name and title*

# AFFIDAVIT

Andrew Sullivan, being duly sworn, states:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so since December 2021. I am currently assigned to a counterterrorism squad in the San Diego Field Office. As a member of this squad, I investigate threats of violence, harassment, and intimidation. I have received training in conducting such investigations. Based on this training and experience, and consultation with other special agents and supervisors with decades of experience, I am familiar with the manner in which persons engaged in threats of cyberstalking, violence and extortion operate; the manner in which these crimes are perpetrated; certain techniques, methods, or practices commonly used by persons engaged in this activity; and indicia of this activity. This training and experience, as well as information obtained from other agents and witnesses, forms the basis for opinions I express below.

2. The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other FBI special agents and other law enforcement officers with decades of experience; my review of documents and computer records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of this application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. The dates, times, and amounts discussed herein are approximate.

//
//
//
//

1

Purpose of Affidavit

3. This affidavit is made in support of an application for a warrant to search Google, LLC (Google), an Internet Service Provider (ISP), for information and records associated to all Google accounts connected with the phone number **(619) 663-6711**, believed to belong to Alejandro "Alex" MARTINEZ, as more particularly described in Attachment A, to seize evidence concerning MARTINEZ's communications with I.C. (hereafter, the Victim) for violations of 18 U.S.C. § 2261A(2)(B) (Cyberstalking), and 18 U.S.C. § 875(c) (Interstate Communications of Threats to Injure), more specifically described in Attachment B. As set forth below, I believe there is probable cause to believe that MARTINEZ has cyberstalked and extorted the Victim.

Information to be Seized

4. This affidavit is made in support of an application for a warrant to search the Google account(s) connected with the phone number **(619) 663-6711 (SUBJECT ACCOUNT)**.

5. Law enforcement officers will seize content, geo-location information, and/or IP addresses, device information, subscriber information, advertiser ID information, and cookie information that would assist law enforcement in locating any evidence concerning violations of 18 U.S.C. § 2261A(2)(B) (Cyberstalking), and 18 U.S.C. § 875(c) (Interstate Communications of Threats to Injure), for the date range of October 1, 2022 to January 27, 2023.

**SUBJECT ACCOUNT**

6. The Victim and MARTINEZ are related and have known each other their entire lives. The Victim knows that SUBJECT ACCOUNT belongs to Alex MARTINEZ, because he has communicated with her over that account. These messages are a subset of the many messages that MARTINEZ sent to the Victim from multiple different phone numbers and email addresses.

Statement of Probable Cause

7. In 2018, the Victim divorced her then-husband and needed money to support herself and her two minor children. The Victim talked to her cousin MARTINEZ. She knew that he was involved in the porn industry, so she talked with him about starting an OnlyFans[1] account and making money that way. MARTINEZ suggested that the Victim just sell nude photos and videos of herself directly to him, instead of posting them to OnlyFans, and he would pay her. After some discussion, the Victim agreed. Beginning in 2018, the Victim sent nude photos and videos of herself to MARTINEZ in exchange for money. The Victim and MARTINEZ communicated over text and email.

8. During 2018, MARTINEZ offered the Victim $5,000 for oral sex and $20,000 for vaginal sex. The Victim refused. MARTINEZ continued to request and pressure the Victim, and she eventually consented to oral sex. From 2018 into early 2021, the Victim performed oral sex on MARTINEZ for money.

9. In early 2021, the Victim began dating another man and informed MARTINEZ that she no longer wanted to send him naked photos and videos, nor did she want to perform oral sex for MARTINEZ. MARTINEZ refused to allow their arrangement to end. Both in person, in text message, and on email, MARTINEZ stated that their arrangement was to continue, or he would post the Victim's nude photos and videos on public websites, such as her children's school website. He also threatened to tell the Victim's family, friends, children, and ex-husband, among others, about their sexual relationship. Because she believed that MARTINEZ would post her videos and photos, the Victim felt compelled to send additional naked photos and videos of herself. She also felt compelled to perform oral sex, under threat of exposure and violence, and without pay.

---

[1] OnlyFans is an internet-based platform headquartered in London where individuals can sell content (e.g., generally pictures, videos, personalized messages) to subscribers. The platform is largely used to post sexual content.

3

10. MARTINEZ regularly threatened the Victim over text and email. For example, from mid-July 2022 through mid-October 2022, MARTINEZ sent the following text messages[2] to the Victim:

    a. "I'm going to do everything I've ever wanted to do to you, it won't be one fuck and done, so be ready for it […] Fucking you in every known position, even though you don't 'want it' I making you cum and you can try to fight that all you want"

    b. "If you don't want anyone to know us and what it was for many years, you jump when I say jump. If not then I'll make sure the whole world knows u and what went down word for word between us & the cut through beast slutty [Victim]…"

    c. "If you don't do what I say, I'll show your kids exactly who you are"

    d. "To be honest I am considering just having you be mine forever, there's no place for you to go.[…] you can't go no where without the truth coming out, & that means all you fear.. or everyone that u don't want to know the truth here will find out. That's inevitable, I can handle jail […] I'm thinking it may sound nice to have you at my control for the rest of our lives. […] there's more of an enemy in me that's out to show you who's boss and make you feel the pain from wronging me"

    e. "Start here mi reina, I have gone well beyond the point of return.. either a situation gets exposed where you'll go to the cops one day and world & every person you know finds out all the juice and truth about the devil in me and the truth about you and I, & how it all came about & went down step by step and text by text and experience by experiences exactly as they happened…or you'll do as I say and suck & Fuck as I command, when I command and how I demand"

---

[2] These messages are only a small subset of the relevant messages from MARTINEZ to the Victim. Specific time and date stamps for the messages are unavailable, because the Victim saved the messages as screenshots.

        f.      "[…] This is check mate.. I own you in the lil are living. Better start practicing your happy face when you fuck me, I'll slap the bitch out of you on god of you give lip or have attitude ["100" emoticon] Fucking try me"

        g.      "I'll fucking send a whole group message to you and our WHOLE family punk bitch. I'll go out with a bang, ["100" emoticon]… Sexual assault, extortion, abuse lol"

11. In August of 2022, the Victim told her and MARTINEZ's mutual aunt (hereinafter referred to as "Aunt") about the nude photos and videos, her interest in stopping, and MARTINEZ's subsequent threatening text messages. The Victim asked her Aunt to talk to MARTINEZ and attempt to get him to stop. The Aunt spoke to MARTINEZ in person and over text message, and he agreed to leave the Victim alone. MARTINEZ left the Victim alone for most of September 2022, but then messaged the Aunt demanding money from the Victim in exchange for his silence. MARTINEZ demanded $750 a month, and the Victim agreed in the hopes that MARTINEZ would not post the pictures and videos and would not demand sex.

12. On or about October 1, 2022, the Victim gave the Aunt $750 in cash to deliver to MARTINEZ. The Aunt met MARTINEZ at his residence, 660 Canyon Drive, Chula Vista, California, and delivered the money to him. The Aunt had MARTINEZ sign a paper, which read "750 First Payment October 2022" on which MARTINEZ wrote under the received section: "Fuck you, A" and "$100.00 late payment penalty (Daily) – payment Due 1st of every month."

13. Later in October, MARTINEZ began text messaging the Victim from a new phone number- the SUBJECT ACCOUNT- later determined to be a Google Voice[3] number.

---

[3] Google Voice is an internet-based voice call and text messaging service, which assigns a subscriber a unique telephone number to be used on both mobile devices and computers.

14. On November 1, 2022, MARTINEZ sent a WhatsApp[4] text message to the Aunt, declining the arranged payment for November and stating that he wanted to "forget she even exist and move on." MARTINEZ did not contact the Victim for several weeks.

15. On or about December 14, 2022, MARTINEZ resumed communications with the Victim over the SUBJECT ACCOUNT, text messaging her and demanding that the Victim delete her social media accounts, that the Victim perform sexual acts for him, and that the Victim tell their respective mothers about their relationship. Text messages that MARTINEZ sent to the Victim from the SUBJECT ACCOUNT included:

    a. "You're just going to make me mad and I'm going to do shit that will hurt you […] hurt/expose you"

    b. "In our case, u cant expect to resolve things without sucking my dick, doing drugs and getting fucked.. plain & simple!"

16. From January 14 through January 23, 2023, MARTINEZ continued to message the Victim. Among these messages were:

    a. "I must remind you that in 2017 you sold your mind, body, & soul to me."

    b. "[…] when I tell you to do something you do it and you don't question me, what is your problem or what in the world are you thinking? […] I've already told you that you are not to take more than 15 min to respond to my text. It's not up for discussion."

    c. "The way this whole day has gone you have got to be fucking messing with me and if that's true you're fucking signing your own death wish."

    d. "If I don't hear back from you in 15 min I'm going to send this out & if you still want to deal w this through silence a hell storm will soon follow. […] I

---

[4] WhatsApp is an internet-based voice call and text messaging service, which assigns a subscriber a unique telephone number to be used on both mobile devices and computers.

promise I'll take this to a point that will be unimaginably humiliating for each of us […] it's only going to bring ur world and everything in it to state of absolute destruction."

   e. "I don't think I can handle anymore of it, actually. The wrong thought of sharing everything for the world to see & immediately ending my life is legit beginning to consume me and my mind. Constantly becoming so angry is only feeding this disaster & the day of the doom now seems to be becoming inevitable & it did not have to be this way."

  17. On January 20, 2023, investigators obtained a Federal Arrest Warrant 23cr00110-JM-1 in the United States District Court for the Southern District of California for MARTINEZ. On January 23, 2023, investigators obtained Federal Search Warrant 23MJ0260 in the United States District Court for the Southern District of California for MARTINEZ's home, 660 Canyon Drive, Chula Vista, California.

  18. On January 27, 2023, the FBI arrested MARTINEZ at his residence and searched it, seizing four electronic devices.

  19. FBI San Diego Regional Computer Forensics investigators have not yet been able to access the content of MARTINEZ's devices without his passcodes. This warrant is sought as an alternative means of accessing the information and investigating the extent of MARTINEZ's use of the SUBJECT ACCOUNT in furtherance of his crimes against the Victim.

## Genuine Risks of Destruction of Data

  20. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

//
//

## Prior Attempts to Obtain Data

7

21. The United States has not attempted to obtain the records and data by other means. Given the nature of this investigation and threats of violence and public exposure, it was not feasible to request that the subject simply provide the United States with access to their accounts for imaging and analysis.

## Conclusion

22. Based on the foregoing, I respectfully submit that there is probable cause to believe that evidence of and property designed for use, intended for use, or that MARTINEZ has used in the commission of violations of 18 U.S.C. § 2261A(2)(B) (Cyberstalking), and 18 U.S.C. § 875(c) (Interstate Communications of Threats to Injure) as further detailed in Attachment B, will be found in Attachment A.

*[signature]*

Andrew Sullivan
FBI Special Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 20th day of March, 2023.

*William V. Gallo*

HON. WILLIAM V. GALLO
U.S. Magistrate Judge

8

## ATTACHMENT A

## Property to Be Searched

Any and all Google, LLC accounts associated with phone number (619) 663-6711 (the "Subject Account"). Google, LLC is an Internet Service Provider headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

# ATTACHMENT B

## Particular Things to be Seized – Google, LLC

I.   Information to be disclosed by Google

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Google, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google is required to disclose the following information to the government, in unencrypted form whenever available, for the account or identifier listed in Attachment A:

a.   All records or other information regarding the identification of the Subject Account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.   All records or other information regarding the devices associated with, or used in connection with, the Subject Account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Google services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscribers Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Equipment Identities ("IMEI").

c.   The contents of all emails associated with the Subject Account, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each

email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.      The contents of all instant messages associated with the Subject Account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message and the media, if any, attached to each instant message;

e.      The contents of all files and other records stored on Google Drive, including all device backups, all Google and third-party app data, all files and other records related to GMail, Google Photos, Photo Library, Google Drive, Google Chrome Tabs and bookmarks, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.      All activity, connection, and transactional logs for the Subject Account (with associated IP addresses including source port numbers), including call invitation logs, messaging and query logs, mail logs, Drive logs, Play Store and App Store logs (including purchases, downloads, and updates of Google and third-party apps), My Google ID and iForgot logs, sign-on logs for all Google services, Game Center logs, logs associated with web-based access of Google services (including all associated identifiers), and logs associated with device purchase, activation, and upgrades;

g.      All records and information regarding locations where the Subject Account or devices associated with the Subject Account were accessed, including all data stored in connection with Location Services and Google Maps;

h.      All records pertaining to the types of service used;

i.      All records pertaining to communications between Google and any person regarding the Subject Account, including contacts with support services and records of actions taken; and

j.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Google (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Google is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

II.     Information to be seized by the government

All information described above in Section I that relates to violations of 18 U.S.C. § 2261A (Cyberstalking), and 18 U.S.C. § 875(c) (Interstate Communications of Threats to Injure) (SUBJECT OFFENSES) and those violations involving the user of the Subject Account for the date range of **October 1, 2022 to January 27, 2023**, including:

a.     The identity of the person(s) who created or used the Google IDs;

b.     Records of communications between the user of the Subject Account and others related to the SUBJECT OFFENSES, as well as such records demonstrating the relationships between the user of the Subject Account and any co-conspirators, witnesses, and the victim;

c.     Records and information relating to saved contacts demonstrating the relationships among, and the identities and contact information of the user of the Subject Account and any victims, witnesses, and co-conspirators;

d.     Records and information relating to photographs, videos, audio recordings, as well as other media, relating to the user of the Subject Account's physical appearance and his stalking and/or extortionate activities, as well as such records demonstrating the relationships among the user of the Subject Account and his victim, witnesses, and any co-conspirators;

e.     Records and information relating to photographs, videos, audio recordings, as well as other media, relating to the stalking or extortion of individuals or sexual activity as to the victim, as well as such records demonstrating the relationships among the victim, witnesses, and any co-conspirators;

f.     Records of internet searches and browsing history relating to the stalking or extortion of individuals or sexual violence against the victims, as well as such records demonstrating the relationships among co-conspirators, victims or customers;

g.      Records of any activity designed to transfer U.S. currency related to the SUBJECT OFFENSES, including the proceeds of commercial sex acts;

h.      Information relating to the user of the Subject Account's schedule, travel, and location during activities related to the SUBJECT OFFENSES; and

i.      Evidence of user attribution showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used in paragraph 1 above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, which may include, in addition to law enforcement officers and agents, support staff, and technical experts.